UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

**STACY MILLER,**

    **Plaintiff,**

**vs.**                                             Case No.: 2:17-CV-144

**CITY OF ALEXANDER, DONNIE
HOWARD, RYAN ALEXANDER, AND
ARCHIE DAVIS,**

    **Defendant.**                                    /

## CONSOLIDATED PRETRIAL ORDER

    **1.**    Counsel are to discuss and agree on every possible factual stipulation. The stipulations must be reduced to writing, signed and filed with the consolidated proposed pretrial order as ATTACHMENT "A" hereto. **Stipulations can spare witness testimony, trial time, and expense. If a party feels the other side is in bad faith refusing to stipulate, they shall set forth "proposed stipulations" on ATTACHMENT "A." Costs of proving what, at trial, was never really disputed and what should have been stipulated, may be taxed against the offending party and attorney. Those costs may include witness fees and additional attorney preparation time costs.**

    2.    As ATTACHMENT "B" to the proposed pretrial order, the parties may, but are not required to, submit questions which they desire the Court to propound to jurors concerning their legal qualifications to serve and any other questions they wish propounded for information purposes. If the parties choose to submit general voir dire questions hereunder, they may submit the questions jointly as one attachment or separately as ATTACHMENTS "B-1" and "B-2".

    3.    State the names of all parties, firms and attorneys to be used in qualifying the jury. State the name of any insurance company involved, and whether it is a stock or mutual company. State the names of all counsel who are members of any firm involved on a contingent fee basis. At the pretrial conference, counsel may be required to disclose policy limits and details of any insurance coverage.

    Morgan and Morgan
    Adian Miller
    Ryan Morgan
    Stacy Miller
    Scott Reddock
    Katie S Mitchell
    Mitchell & Reddock LLC

4. Identify the basis upon which the jurisdiction of this Court is based and any questions relating to its jurisdiction.

Federal question, 28 U.S.C. 1331.

5. List any motions or other matters in the case which remain unresolved. Any motion not so enumerated shall be deemed withdrawn by the moving party.

Not applicable.

6. All discovery is to be completed pursuant to the Local Rules. The date of the conclusion of the discovery process and the expected completion of any untranscribed deposition shall be stated.
All discovery is complete.

7. State whether the names of the parties in the above-captioned case(s) are complete and correct and whether there is any question of misjoinder or non-joinder.

8. Outline of plaintiff(s)' case.

> Plaintiff worked for the Darien Police Department as a Criminal Investigator. Plaintiff was the only female officer on the force. During the course of her employment, Plaintiff was subject to sexist and retaliatory behavior in the workplace, including, but not limited to:
> - Plaintiff received lesser pay than male employees who had performed her position.
> - Plaintiff was passed over for promotions, while her male colleagues were not.
> - Plaintiff was not given comparable equipment as that received by her male colleagues.
> - Plaintiff was harassed in the workplace.
> - Plaintiff was disciplined without cause.
> - When Plaintiff filed a Charge of Discrimination with the EEOC, Defendant threatened her with a criminal investigation.
>
> Defendant has admitted to treating women differently in the workplace. After years of discriminatory treatment, harassment and retaliation, Plaintiff was forced to seek employment elsewhere. However, given the publicity of this case, Plaintiff has struggled to find comparable work, and her career has been immeasurably harmed. Defendant's actions have also caused Plaintiff stress and anxiety.

9. Outline of defendant(s)' case.

**NOTE:   DEFENDANT(S) SHOULD PAY PARTICULAR ATTENTION TO THIS PARAGRAPH. AT THE TRIAL, IT WILL BE USED BY THE COURT IN DIRECTING THE CASE AND INSTRUCTING THE JURY.**

Defendant(s) shall:

(a) Furnish a <u>short</u>, <u>succinct</u>, factual and narrative statement as to all defenses (general

and special). This statement should not be argumentative and should not recite evidence. In no event shall the statement be more than one page.

(b) In all actions involving a counterclaim, cross-claim, or third-party action, defendant(s) should summarize the matter, using the outline required as to the main claim.

After being put through the police academy by the Darien Police Department, Miller worked as a patrol officer for approximately two years, and then was transferred to the Criminal Investigations Division in May of 2014.

In February 2016, Miller had a falling-out with her supervisor, who wanted to discipline her for various shortcomings in her work performance. Chief Howard instead overturned the discipline and moved Miller to a different chain of command. In a February 10, 2016 meeting, Miller met with her new supervisor and the police captain, and told them that she was happy to be in the new chain of command but unhappy with her pay rate and her department-issued vehicle. They promised to address her concerns. She filed a grievance with the City the following day, and an EEOC charge the day after that.

Shortly thereafter, the Department honored Miller's request that she be issued an unmarked police vehicle rather than the marked one she had been driving. She was permitted to take a nine-day vacation, and the Department also paid for her to attend a two-week physical-training seminar at her request despite the fact that it did not benefit the Department in any way.

Plaintiff's starting pay rate was the same as that of any officer coming into the Department with no experience – approximately $13 per hour. For several years, the former City Manager refused to provide money to the Darien Police Department for raises beyond small cost-of-living adjustments and high-level promotions. Chief Howard advocated to the City Manager for Miller, specifically, to receive a pay raise, to no avail. Thus, from the time Plaintiff began working in CID in May of 2014 until May of 2016, neither Miller nor any other employee of the DPD received a pay raise other than those tied to high-level promotions. In May 2016, the new Interim City Manager allocated money for Police Department raises, and Miller and two male officers who had worked for similar lengths of time for the same rate of pay were all promoted and given pay raises to $16 per hour. This was more than the highest hourly rate ever paid to her predecessor, who had more than a decade of law-enforcement experience; more than the starting rate paid to the current CID investigator, who had eight years of experience when he was hired; and equal to the current pay rate of the current CID investigator.

Miller had told the Interim City Manager that she was pleased with the changes that had occurred since she filed her grievance and EEOC charge and that she would likely drop the charge. When the time came for the City to respond to the charge, the Interim City Manager met with Miller to find out whether she intended to pursue or drop the charge. He pointed out that she was happy with the changes in her work environment, that she could always re-file the charge if any of the changes were reversed, and that having to investigate and respond to the charge would likely lead to other DPD employees submitting sworn statements contradicting her allegations. Miller dropped the charge.

After Miller received the unmarked car, the raise, the promotion, and the transfer to a new chain of command in mid-2016, no further changes in her work conditions occurred. In early August of 2016, Chief Howard was approached by someone with the School Board seeking an employment reference for Miller.

Howard provided a favorable reference and then set about hiring a replacement for Miller. Howard told Miller that she could work part-time for DPD until her retirement vested at five years, but the Interim City Manager consulted with the City Attorney and learned that this was actually not possible. Because her replacement in CID had already been hired, Miller was offered the opportunity to stay on as a full-time patrol officer so her retirement could vest, but she declined.

10. In all cases in which violation of the United States Constitution or a federal or state statute or regulation is alleged, the party making such claim shall specifically state the constitutional provision and/or statute allegedly violated and the specific facts on which such alleged violation is based. The party shall detail the damage or relief sought pursuant to such claim and recite supporting authority.

Gender and retaliation claims pursuant to Title VII 42 U.S.C. § 2000e(b);

11. In tort cases, any party bearing a burden of proof shall list each and every act of negligence or intentional tort relied upon.

(a) Under a separate heading, state all relevant statutes, rules, regulations and ordinances allegedly violated. Also, recite any supporting authority.

(b) List all items of damages claimed or non-monetary relief sought.

(c) In all cases involving alleged permanent injuries or death, furnish a full statement as to the age, alleged life expectancy and/or probable duration of the injuries, and earnings, income tax records or other records to prove earnings.

Not applicable.

12. In contract cases or any other action not addressed in paragraphs 10 or 11, any party having a burden of proof shall outline the particular alleged breach of contract or the basis of any other cause of action, enumerate any applicable statute involved, and detail the damages or relief sought and recite appropriate supporting authority.

Not applicable.

13. If there is any dispute as to agency, state the contentions of the parties with respect to agency.

Not applicable.

14. State who has the burden of proof (including any affirmative defenses or special issues) and who has the opening and closing arguments to the jury.

a. Plaintiff has the burden of proof regarding liability and damages. Plaintiff reserves the right to have opening and closing arguments to the jury.

  b. Defendant has the burden of proof regarding affirmative defenses and mitigation of damages.

15. Under this paragraph, both plaintiff(s) and defendant(s) should separately list the witnesses whom each <u>will</u> have present at the trial and those whom each <u>may</u> have present at the trial. Witnesses intended to be used solely for impeachment shall be listed; however, if a party has a genuine reason for not listing and disclosing an impeachment witness, such party may address the Court *ex parte* and seek a ruling as to whether disclosure may be properly withheld. A representation that a party <u>will</u> have a witness present may be relied on by the opposing party unless notice to the contrary is given in sufficient time prior to trial to allow the opposing party to subpoena the witness or obtain his testimony. If a witness is not listed when the proposed pretrial order is filed, the Court will not allow the addition of a witness by any party, EXCEPT for providential or other good cause shown to the Court by application for amendment to this Order.

### a. Plaintiff's Witness List

### i. Will Have Present at Trial

1. Stacy Miller;
2. Korone Robinson;
3. Donnie Howard;
4. Archie Davis;

### ii. May Have Present at Trial

1. Nick Roundtree;
2. Ryan Alexander;
3. Anthony Brown;
4. Michael Melton
5. Thomas Kidder;

### a. Defendant's Witness List

### i. Will Have Present at Trial

### ii. May Have Present at Trial

1. Donnie Howard
2. Archie Davis
3. Anthony Brown
4. Ryan Alexander

5. Nick Roundtree
6. Sam Frank
7. Joe Creswell
8. Aaron Turner

16.   All documents and physical evidence that may be tendered at the trial shall be exhibited to and initialed by opposing parties prior to the pretrial conference. All evidence shall be marked by the parties prior to the pretrial conference, and the parties are encouraged to submit a joint exhibit list on a form supplied by the Clerk. If separate exhibit lists are submitted, they shall be submitted on the forms supplied. Duplications of exhibits should be avoided to the extent practicable. Exhibit lists should be submitted to the Court at the pretrial conference. The material therein shall be identified as follows:

(a) A list of documents and physical evidence submitted as joint exhibits.

(b) Where separate lists are being submitted, a list of documents and physical evidence to be introduced by the plaintiff(s). Copies of such exhibits shall be provided to counsel for each other party.

Objections and reasons therefor shall be stated in writing and be filed five (5) days prior to the time of the pretrial conference. Items not objected to will be admitted when tendered at trial.

(c) Where separate lists are being submitted, a list of documents and physical evidence to be introduced by the defendant(s). Copies of such exhibits shall be provided to counsel for each other party.

Objections and reasons therefor shall be stated in writing and be filed five (5) days prior to the time of the pretrial conference. Items not objected to will be admitted when tendered at trial.

(d) Any document or other physical evidence listed by any party and not objected to, or to which objections have been overruled, may be received in evidence on offer by any other party, in the event the listing party does not actually offer it into evidence.

(e) The foregoing shall not be deemed or construed to expand or limit the rules relating to the admissibility of evidence generally.

**NOTE:** **COUNSEL MUST SUBMIT TO THE COURTROOM DEPUTY CLERK THREE COPIES OF THE TYPED WITNESS LIST AT THE PRETRIAL CONFERENCE. All exhibits shall be cross- initialed by the attorneys for the parties and properly tagged as required by the Local Rules of this District. This cross-initialing procedure shall be completed when counsel meet to confer on the preparation of the pretrial order.**

17. List all witnesses whose testimony by deposition will or may be offered by each party and the specific deposition pages and lines to be offered. All objections by opposing parties to any portions of the deposition(s) shall be set forth with specific reference to the portion of the testimony objected to and the basis therefor.

(a) Prior to trial, counsel shall confer to eliminate all extraneous, redundant, and unnecessary matter, lapses, and colloquy between counsel in the deposition excerpts. Counsel shall also attempt to resolve all objections to deposition testimony to be offered.

(b) The parties shall, if practicable, conform deposition exhibit numbers in trial questions and testimony to the numbers of trial exhibits.

18. Each party shall separately provide a memorandum of authorities as to any questions of law likely to arise at the trial, including the merits of plaintiff(s)' claim, defenses asserted, matters of evidence, etc.

Defendants rely on the briefing submitted in support of their Motion for Summary Judgment.
Plaintiff relies on the briefing submitted in Opposition to Defendant's Motion for Summary Judgment.

19. Plaintiff(s)' counsel estimates _2_ (days) to present plaintiff(s)' case; defendant(s)' counsel estimates _1_ (days) (hours) to present the defense.

20. Plaintiff(s) _X_ has _____ has not offered to settle.
    Defendant(s) _____ has _X_ has not offered to settle.

It appears at this time that there is
    ____ A good possibility of settlement.
    _X_ Some possibility of settlement.
    ____ No possibility of settlement.

The parties _X_ do _____ do not wish to confer with the Court regarding settlement.

21. State any other matters which should be covered by pretrial order, including rulings desired of the Court prior to trial.

> The parties do not have any other matters at this time, besides what is stated within, that the parties wish the Court to address in the pretrial order.

22. State whether or not the issues of liability and damages should be tried separately (bifurcated) and give any other suggestion toward shortening the trial. Where bifurcation is opposed by any party, such party shall state the reasons for such opposition.

> The parties do not want the trial bifurcated.

23. In cases where either party requests bifurcation of issues or a special verdict, submit a copy of the proposed verdict as PLAINTIFF'S ATTACHMENT "C" and/or DEFENDANT'S ATTACHMENT "C" hereto. Lead counsel are to discuss and agree on such special verdict where possible. Where agreement is not reached, state the basis for any objections to the special verdict request.

24. In non-jury cases, the parties shall each file their proposed findings of fact, summary of depositions, and conclusions of law not later than one week prior to the assigned trial date.

25. The final proposed pretrial order shall be signed by counsel for each party and shall contain a final paragraph, as follows:

> **IT IS HEREBY ORDERED that the foregoing constitutes a PRETRIAL ORDER in the above case(s), that it supersedes the pleadings which are hereby amended to conform hereto and that this PRETRIAL ORDER shall not be amended except by ORDER OF THE COURT.**

This _____ day _____ of , 20_____.

_____

**EXHIBIT A- STIPULATIONS**

1.     Prior to joining the Darien police force, Plaintiff had her master's degree in criminal justice.

2.     Plaintiff began working for Defendant in 2012.

3.     After completing two years in patrol, Plaintiff was moved to the Criminal Investigations Division (CID) and reported to Ryan Alexander.

4.     Nick Roundtree was Plaintiff's predecessor.

5.     Plaintiff's divorce was finalized in May of 2016.

6.     Plaintiff developed a romantic relationship with a male colleague named Korone Robinson.

7.     Plaintiff testified to communication issues with Ryan Alexander

8.     Plaintiff was required to call Alexander and obtain permission before riding in the same vehicle as Korone Robinson during work hours.

9.     Alexander attempted to discipline Plaintiff for being in the vehicle with Robinson without permission on April 10, 2015.

10.     Alexander assigned Plaintiff to work a night shift.

11.     Alexander disciplined Plaintiff for not working the night shift.

12.     Alexander also required Plaintiff to organize the evidence room.

13.     Howard eventually transferred Miller to Lt. Brown's chain of command.

14.     Plaintiff requested equal opportunity forms from Alexander.

15.     Plaintiff met with Anthony Brown and Archie Davis on February 10, 2016 regarding several work-related complaints.

16.     Plaintiff filed a grievance with the City of Darien on February 11, 2016.

17.     Plaintiff filed a charge with the EEOC on February 12, 2016.

18.     On March 29, 2016, Plaintiff met with Davis and Howard regarding her EEO claims.

19.     On March 31, 2016, Davis again met with Plaintiff regarding her EEO claims.

20.     On June 4, 2016, Davis again met with Plaintiff regarding her EEO claims.

21. Chief Howard initially told Plaintiff that she could work part time until her retirement vested.

22. Plaintiff accepted another full time position.

23. Archie Davis informed Plaintiff that the City Attorney determined that Chief Howard was mistaken, and that part-time employees cannot accrue retirement benefits.

24. Davis told Plaintiff she could only continue to accrue retirement benefits if she went to patrol and worked full time.

### EXHIBIT B- VOIR DIRE QUESTIONS

The parties request that the Court propound to the jurors the following questions to determine their legal qualifications to serve, pursuant to 28 U.S.C. § 1865:

1. Are you sufficiently proficient in reading, writing, and understanding the English language?

2. Are you over 18 years of age?

3. Do you currently have a criminal charge, either in State or Federal Court, pending against you that is punishable by imprisonment for more than one year?

4. Have you been convicted in State or Federal Court of a crime punishable by imprisonment for more than one year; and if so, have your civil rights been restored?

5. Do you have any physical or mental health conditions that would prevent you from serving as a juror in this case?

6. Do you currently live in the town of Darien?

7. Are you a citizen of the United States?

8. Are you related by blood or marriage to anyone employed by any of the law firms?

9. Have you ever been employed by any of the law firms, or represented in a legal matter?

10. Have you ever been employed by any of the parties in this case?

11. Do you know any of the prior or current attorneys in this case?

12. Do you know any of the parties in this case?

13.     Are you related by blood or marriage, or have you had any dealings of any kind with any of the following persons:

      a.     Any employee of Defendant;

      b.     Stacy Miller;

      c.     Ryan Alexander;

      d.     Donnie Howard;

      e.     Archie Davis;

14.     Do you have any interest, financial or otherwise in the outcome of this suit?

15.     Has anyone already formed an opinion about this case or any of the parties in this case?

16.     Is there anyone who feels, for any reason at all, that they cannot be fair and impartial if selected as a juror in this case?

17.     Do you have any particular knowledge of this case or any of the facts in connection with it, including anything you may have read or heard from any source whatsoever, such as a friend, relative, or any news media?

18.     Have you ever served on a jury before? If so, please describe the nature and outcome of the case.

19.     Are you currently taking any medicine or drug that might impair your ability to render satisfactory jury service in this action? Please explain.

## ATTACHMENT B-1 for Plaintiff

Plaintiff's Proposed Questions for Voir Dire Examination

1. Have you had any prior experience with the legal system as a plaintiff or defendant? If so, what was the result? Were you satisfied or dissatisfied with the overall experience?
2. Have you ever been a witness in any legal proceeding? What aspect were you a witness for? Were you satisfied or dissatisfied with the overall experience?
3. Have you ever engaged the services of an attorney? Were you satisfied or dissatisfied with the overall experience?
4. Have you or any member of your family attended law school, engaged in the practice of law, or worked in a law office?
5. Have you, any member of your family, or a close friend have ever been a plaintiff or a defendant in any suit brought as a result of allegations of employment discrimination or retaliation?

6. Have you served previously on a jury in either the state or federal court? If so, what type of case was it? Was the jury able to reach a verdict? Were you the foreperson?
7. Have you, your relative, or a close friend ever been accused of discriminating against another person?
8. Have you ever had a job where you thought you were being overworked and underpaid?
9. Is there any reason why you could not give a fair and impartial hearing to either party in a case where a Plaintiff states he was discriminated against because she is a woman?
10. Do you have any strong opinions about black or African-American people in the work place?
11. Do you think that racism still exists?
12. Do you believe sexism exists?
13. Have any of you ever been terminated for a reason you feel was unjust or illegal?
14. Do you feel a business owner has the right to fire an employee for any reason even if it is an illegal reason?
15. Have you ever made a complaint at work?
16. Have you ever thought you were being punished by your employer for making a complaint or grievance at work?
17. If you find that it is more likely than not that the Plaintiff's claims are true, you must find for the Plaintiff in this case. Please raise your hand if you would need even more proof or more certainty before you could find for the Plaintiff.
18. Plaintiff is seeking back pay, front pay and actual damages in a significant amount. If you believe from the evidence presented and the law as given you in the charges by the Court that Plaintiff are entitled to recover such amount, please raise your hand if you would have any hesitation whatsoever about awarding a significant amount of damages.
19. In order to award damages, you only need to determine whether it is more likely than not that the damages that the Plaintiff has asserted is the correct amount. Please raise your hand if you would need more proof than that to award money to the Plaintiff.
20. Do any of you feel that it would be difficult for you to render an unbiased and impartial verdict in this case for any reason that we have not discussed?
21. What else is there—anything at all—that you would want to know about you, if you were me standing up here and trying to decide who will be on the jury? Anything? Even if you're not sure it makes any difference?
22. You have rights as a juror one of the rights is to hear all of the evidence. So if a witness says something you don't hear, will you be comfortable raising your hand and telling the judge?
23. You also have the right to understand the law. Every so often during deliberations, jurors disagree over what the law is. Sometimes a discussion will start. Will you be comfortable asking the judge to read the instructions again instead of trying to decide it among yourselves?

Plaintiff reserves the right to ask any questions identified in Attachment B or B-2 to this Pretrial Order to the extent that they are not asked by the Court or by Defendants. Plaintiff also reserves the right to ask reasonably related follow-up questions to any of the enumerated questions.

**ATTACHMENT B-2 – DEFENDANT'S PROPOSED VOIR DIRE**

1. Does anyone have a medical reason or personal hardship that would make it difficult to serve as a juror in this case?

2. Does anyone have difficulty reading, hearing or understanding the English language?

3. Do any of you know the plaintiff, Stacy Miller, in any way whatsoever and if so, how?

4. Do any of you know any of the Defendants in this case?

5. Does anyone know or are you acquainted with any current or former employees of the Darien Police Department? If yes, please identify the nature of your relationship and whether that relationship would hinder or affect your ability to give a fair trial to all of the parties in this case.

6. Have you or has anyone in your immediate family ever made a claim against another person or entity for money damages, whether or not that claim resulted in a lawsuit?

7. Have any of you, or has anyone in your immediate family ever had a dispute or what you would consider to be a bad experience with a local, state, or federal government, or any branch or department of any local, state, or federal government? If so, please briefly describe the basis for that dispute.

8. Has anyone ever made a claim or filed a lawsuit against you or any member of your family seeking money damages as a result of any claimed wrongdoing on your part? If you answer is yes, please briefly explain the circumstances.

9. Has anyone here ever been employed by a public agency such as a city, a county, the state, or the federal government? If so, please state the name of the employer and the nature of your position.

10. Have you read in the newspapers, read on the internet, seen on television, or heard on the radio anything about this case, or about any of the parties in the case, or do you have any knowledge about the facts or events of this case? [Follow up outside the presence of the pool as appropriate].

11. Have any of you ever served in any branch of the United States Armed Forces or been employed in the occupation of law enforcement, whether in the public or private sector?

12.     Is anyone here a lawyer, married to a lawyer, or in a substantial relationship with a lawyer?  Has anyone here studied law or worked in a law office?  Notwithstanding what you feel the law is or should be on a particular subject, will you apply the law as you are instructed at the end of this case?

13.     Have you or any member of your family ever been stopped, ticketed, or arrested by an officer of the Darien Police Department? If so, please identify the officer if known and describe the approximate date and nature of the encounter.

14.     Have any of you ever received any type of financial benefits from any local, state, or federal government agency?  For example, Social Security benefits, unemployment benefits, Medicaid, Medicare, disability benefits, etc.?

15.     Do any of you have social media accounts, for example, Facebook, Twitter, Instagram, or similar types of social media accounts? If so, how often do you log-in, post, or read such accounts?

16.     Do any of you believe that you have ever been a victim of discrimination on the basis of gender? If so, what were the circumstances of the discrimination, and what, if any, measures did you take to confront or otherwise address the situation?

17.     Do any of you have a family member or close friend who you believe has been discriminated against on the basis of gender? If so, what is your relationship to that person and what were the circumstances of the discrimination?

18.     Do any of you generally believe that law enforcement officers are not trustworthy?

19.     Have any of you ever made a comment, social media post, or letter to an editor that was critical of law enforcement or the way law enforcement handled a matter?