IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

STACY MILLER,                            *
                                          *
        Plaintiff                         *
                                          *
        v.                                * Case Number: 2:17-cv-144
                                          *
CITY OF DARIEN                            *
                                          *
        Defendant                         *

**DEFENDANT'S SUPPLEMENTAL BRIEF
REGARDING CONSTRUCTIVE DISCHARGE**

COMES NOW Defendant City of Darien and responds to the Court's request for

a succinct statement setting forth its position that constructive discharge is no longer at

issue in this case, as follows:

**Introduction**

Miller did not plead a discrete claim for constructive discharge, and she did not

plead constructive discharge in connection with her claim for gender discrimination.

Rather, constructive discharge is mentioned in her Amended Complaint *only* as a facet

of her claim for race discrimination. Defendants moved for, and were granted,

summary judgment on the only constructive-discharge allegations Miller has asserted.

Now, Miller has belatedly attempted to tie her constructive-discharge allegation to her

surviving gender-discrimination claim, despite her admissions that her concerns of

gender discrimination had been adequately addressed by a promotion, a raise, and a

new vehicle only a few months before she left the Darien Police Department. But

Miller's Amended Complaint in conjunction with the Court's summary-judgment order leave her no avenue by which to continue pursuing a constructive-discharge claim, and any such claim would have been subject to summary judgment had Miller actually pleaded it.

### Argument and Citation of Authority

I.    *Miller did not plead constructive discharge on the basis of gender.*

Miller's Amended Complaint contains a separate sub-heading within her recitation of factual allegations called "Miller's Forced Resignation from DPD." The first allegation in that section is that "Officer Robinson was terminated from DPD on or about August 3, 2016, at which time Miller became fearful she would be terminated next." Dkt. 33, ¶ 73. The second allegation is that "Miller felt she did not have any choice but to immediately find alternative employment." Dkt. 33, ¶ 74. The remaining allegations in the section relate to Chief Howard's misunderstanding as to whether Miller would be able to accrue retirement benefits while working in a part-time status. Dkt. 33, ¶¶ 75-78. Completely absent from Miller's Amended Complaint, either in the "Forced Resignation" section or elsewhere, is any suggestion that Miller was forced to resign as a result of disparate treatment on the basis of her gender.

In fact, the actual counts of Miller's Amended Complaint leave no question that her allegations of constructive discharge are linked solely to her claim of race discrimination. The count setting forth Miller's claim for gender discrimination alleges that Defendants discriminated against her by "creating and enforcing arbitrary policies,

-2-

disparities in wages, opportunities, equipment and work assignment." Dkt. 33, ¶ 84. The separate count setting forth her claim for race-based discrimination and retaliation, on the other hand, alleges that Defendants discriminated by "transferring her to a different shift, revoking her full investigatory powers, threatening criminal sanctions, transferring her to patrol, *forcing her resignation*, and willfully interfering with her prospective future employment opportunities." Dkt. 33, ¶ 89 (emphasis supplied).

Finally, to dispel any potential confusion about the basis for Miller's constructive-discharge claim, counsel for Defendants asked Miller during her deposition to clarify the exact reasons she claimed she was constructively discharged:

> Q.    Okay. So when you say you were forced to resign, I just want to know exactly what all you think forced you to resign. Was it anything other than Archie saying if you want to stay it will only be as a full-time patrol officer?
>
> A.    That's -- yeah, that's my understanding. That was my understanding from that conversation.
>
> . . .
>
> Q.    If you had known when you were deciding whether to take the school board job that you would not be able to have your retirement vest by working part-time for the city, would you have let the school board job go to stay at the city and have your retirement vest?
>
> A.    I don't know because, like I said, at this time like it was like if I stay, you know, I'm likely going to get in some sort of trouble. They're going to find something that I've done wrong or whatever. . . .
>
> Q.    And when you say you figured they were going to find something to write you up and fire you for, at that point in August 2016 you hadn't been disciplined in any way in six months; right?
>
> A.    Right. But neither -- neither had Korone.
>
> Dkt. 58-1, 122:6-124:9.

Asked to identify the reasons she felt she was forced to resign, Miller – in perfect alignment with her written pleadings – cited only her participation in a relationship

with Robinson and the misunderstanding about retirement benefits that occurred after she had already found a new job.

In their motion for summary judgment, Defendants noted Miller's claim that she was "constructively discharged based on her participation in an interracial relationship." Dkt. 53-1, p. 1. Miller's first attempt to link her allegations of constructive discharge to her claim for gender discrimination came in her response to Defendants' motion, wherein Miller cited several foreign cases involving plaintiffs who were allowed to proceed with claims of constructive discharge after repeatedly seeking, and being denied, promotions. Dkt. 60, p. 11. Although Defendants focused in their reply brief on the substantive issues with that claim, which will be discussed briefly below, Miller has a larger problem – she waited far too long to claim that she was constructively discharged on the basis of her gender. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1313 (11th Cir. 2004) (ruling that plaintiff may not "raise a new legal claim for the first time in response to the opposing party's summary judgment motion). Although the Court noted in its summary-judgment order that "most of the facts on which [Miller] relies to support her constructive discharge claim concern Defendants passing over her for promotions in favor of her male counterparts," the first and only time Miller relied on those facts was in her brief opposing summary judgment. Dkt. 65, p. 40. As shown above, her actual pleadings and her deposition testimony rely solely on facts linked to her race-discrimination claim to support her allegation of constructive discharge.

-4-

Miller never pleaded gender-based constructive discharge, and as recently as her deposition just before the close of discovery, she clarified that her allegations of constructive discharge related solely to her participation in a relationship with Robinson and the subsequent misunderstanding regarding retirement benefits. She should not be permitted to proceed to trial on a theory that was never pleaded, was not disclosed during discovery, and was first mentioned only after Defendants had moved for summary judgment.

II.   *If Miller had pleaded a claim for gender-based constructive discharge, that claim would have been subject to summary judgment for the same reasons as her race-based constructive discharge claim.*

In its summary-judgment order, the Court dismissed Miller's claim for constructive discharge on the basis of race:

> . . . Miller argues that part of the basis for her decision to resign from the DPD was her belief that she would be terminated after Robinson's discharge. However, the evidence, even when construed in Miller's favor, in no way supports such a belief. To the contrary, the undisputed evidence shows , and Miller concedes, that after her disciplinary meeting on February 3, 2016, she was allowed to keep her position as an investigator. She also concedes that in the ensuing months, she was given a promotion to Sergeant, a pay raise, and that the February written reprimand was expunged from her record. She does not identify any other changes to the terms or conditions of her employment between these events and the time of her resignation that would suggest Defendants' attitude toward her had changed or that her termination was imminent. [Dkt. 65, p. 40].

As explained above, Miller did not plead constructive discharge with respect to her gender-discrimination claim, so the Court properly did not discuss Miller's

constructive-discharge allegations in the portion of its order analyzing her gender-discrimination claims. However, if Miller had pleaded a claim for gender-based constructive discharge, the rationale set forth in the section of the Court's order addressing the race-based constructive-discharge claim – namely, that after Miller received a promotion, a pay raise, a new vehicle, and had a written reprimand expunged from her file, there were no other changes to the terms and conditions of her employment prior to her resignation – would apply equally to defeat that claim.[1]

The Court's discussion and rejection of Miller's remaining constructive-discharge arguments is likewise applicable whether those arguments are linked to her race-discrimination or gender-discrimination claim. Evaluating an allegation that Miller actually did plead, the Court held that Howard merely misunderstood the City's retirement system when he represented that Miller could accrue retirement benefits in a part-time status. Dkt. 65, pp. 60-61. The Court further held that the undisputed evidence shows that Miller's replacement was not hired until after Howard learned Miller would be departing the job. Dkt. 65, p. 61. In summary, the Court rejected every argument Miller advanced in support of her allegations of constructive discharge, and the court's conclusions would apply with equal weight even if Miller had pleaded constructive discharge in connection with her gender-discrimination claim.

---

[1]     Defendants addressed the substantive failures of Miller's untimely gender-based constructive-discharge allegations in their reply brief in support of summary judgment, and incorporate that discussion here. Dkt. 64, pp. 14-17.

**Conclusion**

Miller did not plead or otherwise attempt to pursue a gender-based constructive-discharge claim until after Defendants had already moved for summary judgment, at which time her attempt to assert a new claim was untimely. Additionally, even if Miller had pleaded a claim for gender-based constructive discharge, that claim would fail for the same reasons set forth by the Court in its order granting summary judgment on Miller's race- and retaliation-based constructive-discharge claims. For each of these reasons, Miller should not be permitted to present arguments or evidence concerning constructive discharge at trial.

Respectfully submitted, this twentieth day of January, 2020.

/s/ Emily R. Hancock
Richard K. Strickland
Georgia Bar No. 687830
rstrickland@brbcsw.com
Emily R. Hancock
Georgia Bar No. 115145
ehancock@brbcsw.com
BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
(912) 264-9667 FAX
**ATTORNEYS FOR DEFENDANT**S

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

STACY MILLER,                          *
                                       *
        Plaintiff                      *
                                       *
        v.                             * Case Number: 2:17-cv-144
                                       *
CITY OF DARIEN                         *
                                       *
        Defendant                      *
_____

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served all parties in this case in accordance

with the directives from the Court Notice of Electronic Filing ("NEF"), which was

generated as a result of electronic filing.

Submitted this twentieth day of January, 2020.

                    BROWN, READDICK, BUMGARTNER
                    CARTER, STRICKLAND & WATKINS, LLP

                    /s/ Emily R. Hancock
                    Emily R. Hancock
                    Georgia Bar Number: 115145

5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
(912) 264-9667 FAX
ehancock@brbcsw.com

                    **ATTORNEY FOR DEFENDANT**S